UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY HARPER, JR.,

                    Plaintiff,                    Case No. 2:20-cv-11138
                                                District Judge Laurie J. Michelson
v.                                       Magistrate Judge Anthony P. Patti

MICHAEL JOHNSON,

                    Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTIONS TO DISMISS AND/OR FOR SUMMARY JUDGMENT (ECF Nos. 22, 28)

I.    **RECOMMENDATION**: The Court should **GRANT** Defendant's motions to dismiss and/or for summary judgment (ECF Nos. 22, 28), and with no remaining claims against the sole Defendant, dismiss the case with prejudice.

II.    **REPORT**

    A.    **Background**

        1.    **Factual Background**

    On April 18, 2020, while incarcerated at Central Michigan Correctional Facility[1] and proceeding without the assistance of counsel, Plaintiff Larry Harper,

---

[1] It appears from Plaintiff's address of record on the docket that he is no longer incarcerated. An offender search reveals that he is currently on parole for one of the two instances discussed herein. *See* www.michigan.gov/corrections, "Offender Search."

Jr. filed a complaint pursuant to 42 U.S.C. § 1983 against Detroit Police

Department Detective Michael Johnson and deputy public defender James A.

Parker, related to the investigation and prosecution of crimes against him.  (ECF

No. 1.)  Upon initial review of the complaint pursuant to 28 U.S.C. §

1915(e)(2)(B), the Court entered an order on July 2, 2020, summarily dismissing

Parker from the lawsuit because he did not act under color of state law as

Plaintiff's public defender.  (ECF No. 5, PageID.53-54, 56-57.)  As to Defendant

Johnson (hereinafter Defendant), however, the Court stated:

> As part of his job as a police detective, Johnson allegedly
> arrested [Plaintiff] without investigating the allegations about him,
> fabricated a police report, caused [Plaintiff] to be wrongfully detained,
> used false information to block his release on bond, and deprived him
> of his constitutional rights in an effort to get him convicted.  Although
> it is somewhat unclear what specific constitutional claims [Plaintiff]
> intends to bring against Johnson, if the facts asserted by [Plaintiff] are
> taken as true, his allegations state a plausible claim for relief under §
> 1983 sufficient to pass initial screening.

(ECF No. 5, PageID.57.)

On March 5, 2021, the Court granted Plaintiff's motion to amend the

complaint, filed for the purpose of removing the allegations and claims against

Parker (ECF No. 10, PageID.68-70; ECF No. 14).  The proposed amended

complaint within the motion to amend then became the operative pleading.  (ECF

No. 14, PageID.140 (citing ECF No. 10, PageID.74-108).)

The underlying facts, as alleged in Plaintiff's amended complaint,[2] are as follows.  In 2018, Plaintiff's wife filed divorce proceedings.  (ECF No. 10, PageID.78-79, ¶¶ 11-12.)  At the time, Plaintiff owned a boxing gym in Detroit, and was involved in a lease dispute over the commercial space for the gym.  (ECF No. 10, PageID.77-78, ¶¶ 8, 10.)

On February 22, 2018, Plaintiff's wife filed for a personal protection order (PPO) against him.  (ECF No. 10, PageID.79-80, ¶ 13.)  Then, on or about April 4, 2018, she filed a police report alleging domestic violence.  (ECF No. 10, PageID.80, ¶ 14.)  Defendant took her statement, and according to Plaintiff, submitted an unsubstantiated Official Statement Form (OSF) to the Prosecutor's Office, which led to confirmation of the PPO on April 27, 2018, and an unfavorable situation with the leaseholder of the gym.  (ECF No. 10, PageID.8-81, ¶¶ 15-16, 18.)

The divorce proceedings and personal relationship between Plaintiff and his wife quieted until September 2018, when she gave another statement to Defendant alleging verbal abuse by Plaintiff, and filed for a violation of the protective order (VPO).  (ECF No. 10, PageID.82-83, ¶¶ 19-21.)  Plaintiff alleges that Defendant

---

[2] Defendant attaches to his motions to dismiss and/or for summary judgment evidence further clarifying the factual circumstances at issue in this case, which is more prudently discussed later in this Report and Recommendation.

testified that it was his job to investigate the claims, but instead of doing so, he

knowingly corroborated the false statements to create favorable conditions for the

VPO.  (ECF No. 10, PageID.83-84, ¶¶ 22.)  The false statements led to Plaintiff's

arrest during divorce proceedings on September 25, 2018, and arraignment on

October 1, 2018.  (ECF No. 10, PageID.84-86, ¶¶ 23, 26-27.)  Throughout

Plaintiff's bench trial in October 2018, the judge allegedly cited Defendant's false

statements and poor investigation, leading ultimately to Plaintiff's acquittal.  (ECF

No. 10, PageID.88-94, ¶¶ 31, 34-39.)

In the introduction of his amended complaint, Plaintiff summarizes his

claims against Defendant, in his individual capacity only, as follows:

> It is alleged that Defendant Michael Johnson maliciously,
> intentionally and unreasonably mis-represented false and fraudulent
> information in his police report to the Prosecutor's Office and gave
> false and fraudulent testimony to the Wayne County Municipal Court
> for the purposes of criminal action against Plaintiff.  As a result of this
> unreasonable arrest and intentional denial of due process, Plaintiff was
> imprisoned and continues to be imprisoned and lost his business and
> new location, violating his rights under the First, Fourth, Fifth, Sixth,
> Eighth and Fourteenth Amendments to the United States Constitution
> and state law.

(ECF No. 10, PageID.74-75, ¶ 2.)  Specifically, Plaintiff claims: (1) a § 1983

violation in Count I; (2) false arrest in violation of the Fourth Amendment and

Michigan Comp. Laws M.C.L. § 750.349b in Count II; (3) false imprisonment in

violation of the Fourth and Fifth Amendments and M.C.L. § 750.349b in Count III;

(4) Fifth Amendment equal protection and due process violations in Count IV; (5)

a Fourteenth Amendment violation in Count V; (6) a violation of his Eighth

Amendment rights in Count VI; and (7) a 42 U.S.C. § 1988 violation in Count VII.

(ECF No. 10, PageID.96-104, ¶¶ 44-70.)

### 2.    Instant Motions

Following his March 9, 2021 answer to Plaintiff's amended complaint (ECF

No. 17), Defendant filed what he titled a motion to dismiss pursuant to Rules 12

and 56 on June 16, 2021, asserting entitlement to dismissal of all claims against

him (ECF No. 22, PageID.187, 198-208).  The motion discusses the factual

circumstances underlying Plaintiff's complaint, and clarifies that there were two

separate investigations, which Plaintiff appears to conflate in his amended

complaint, one of which resulted in acquittal and the other in conviction.  (ECF

No. 22, PageID.193-196.)  The first, which Defendant refers to as the "domestic

violence investigation" began when, on April 4, 2018, Plaintiff's wife gave

Defendant a statement regarding an assault by Plaintiff that she said took place on

February 14, 2018.  (ECF No. 22, PageID.193 (citing Exhibit A, 4/4/18 Incident

Report, ECF No. 22-2).)[3]  On the basis of her statement, Defendant wrote a

domestic violence misdemeanor warrant which was signed by the Assistant Wayne

County Prosecuting Attorney.  (ECF No. 22, PageID.194 (citing Exhibit C, DV

---

[3] I note that Defendant labeled the exhibits attached to his motion to dismiss in the Index, but not amongst the actual exhibits, making it very difficult to differentiate between each, particularly when viewed as a single downloaded document.

Misdemeanor Warrant Request, ECF No. 22-4).)  And as Plaintiff alleges in his amended complaint, a bench trial was held on October 18 and 19, 2018, at which Plaintiff was found not guilty of the domestic violence charge.  (ECF No. 22, PageID.194 (citing Exhibit D, DV Case Register of Actions, ECF No. 22-5).)

The second investigation, which Defendant refers to as the "aggravated stalking investigation," occurred in August and September 2018, "after the domestic violence incident but before the trial on the domestic violence incident," and involved Plaintiff's wife's reports of multiple violations of the PPO she had obtained against him.  (ECF No. 22, PageID.194-196 (citing Exhibits F-J, Incident Reports and Witness Statement, ECF Nos. 22-7-22-11 and Exhibit K, Phone Recordings and Text Messages in Support of her Allegations, ECF No. 22-12).) Based on the allegations, Defendant wrote a report and recommended to the prosecutor charges of aggravated stalking and malicious use of telecommunication services.  (ECF No. 22, PageID.196 (citing Exhibit L, Investigator's Report, ECF No. 22-13).)  Ultimately, Plaintiff was found guilty of the above charges following a jury trial.  (ECF No. 22, PageID.196 (citing Exhibit M, Aggravated Stalking Case Register of Actions, ECF No. 22-14).)

In the motion to dismiss, Defendant argues that: (1) Count I must be dismissed for failure to state a claim because 42 U.S.C. § 1983 does not itself create any substantive rights; (2) he is entitled to common law immunity from

6

Plaintiff's false arrest and false imprisonment claims (Counts II and III) because such claims are intentional torts under Michigan law, and Plaintiff was lawfully detained; (3) he is entitled to qualified immunity on Count IV (Fifth Amendment) because he did not violate any of Plaintiff's clearly established rights; (4) Count V (Fourteenth Amendment) must be dismissed for failure to state a claim upon which relief can be granted; (5) as Plaintiff has not articulated any claims related to confinement, the Court should dismiss his Eighth Amendment claim in Count VI; and (6) Count VII must be dismissed for failure to state a claim because 42 U.S.C. § 1988 does not create an independent cause of action.  (ECF No. 22, PageID.198-208.)

The Court ordered Plaintiff's response to the motion by July 23, 2021 (ECF No. 23), but he did not file his meager and unsworn two-page response in opposition until July 26, 2021, asserting that his amended complaint contains claims for fraud under Fed. R. Civ. P. 9(b), and stating:

> Contrary to what is seemingly advocated in [Defendant's] Motion to Dismiss, Rule 9(b) does not raise the pleading standard to the level required to survive a motion for summary judgment or to prevail at trial, requiring Larry Harper to actually prove all material issues of its case; instead, Larry Harper need only set forth the particular facts of the 42 USC 1983 and fraud, which at this stage must be accepted as true, to survive a motion for dismissal [of] the Complaint.

(ECF No. 24, PageID.267.)  Further, he argues that qualified immunity is not justified with any legal basis and states:

7

> This Court's modern immunity doctrines . . . depart in several ways
> from the 19th-century common law, most notably in that "qualified
> immunity at common law could be overridden by showing an officer's
> subjective improper purpose, instead of 'clearly established law.'"
> The defendant has admitted under oath that he did not perform a
> proper investigation, if any at all, as it pertains to the case where the
> constitutional violation of Mr. Harper's rights took place.

(ECF No. 24, PageID.267.)

Defendant filed a motion requesting that the Court not consider Plaintiff's late response brief but titled it a supplemental brief (ECF No. 25), so it failed to populate as a motion on the docket. Nevertheless, I have considered Plaintiff's response brief to make my recommendation to the Court.

Pursuant to the Court's scheduling order, which set a deadline of December 8, 2021 for merits-based summary judgment motions (ECF No. 15, PageID.143-144), Defendant filed a separate motion for summary judgment on that date (ECF No. 28), mostly referencing and building upon the arguments made in his first dispositive motion (ECF No. 22), and adding exhibits. He summarizes his arguments as follows:

> Defendant is entitled to summary judgment on Plaintiff's
> constitutional claims—Counts I, IV, V, VI, and VII—because there is
> no evidence Plaintiff was denied due process, he has no standing to
> assert an Eighth Amendment violation for his domestic violence
> prosecution, and he is estopped from asserting any civil claims related
> to his aggravated stalking conviction.
>
> Defendant is entitled to summary judgment on Plaintiff's state tort
> claims—Counts II and III—because he was not arrested or
> imprisoned, there was probable cause for the charges against him, and

8

he is estopped from asserting any civil claims related to his
aggravated stalking conviction.

(ECF No. 28, PageID.286-287.)

### B.    Standard

Defendant brings his first dispositive motion pursuant to Rules 12 and 56.

(ECF No. 22, PageID.185.)  However, as Defendant has presented evidence

beyond the pleadings in support of that motion as well as his second dispositive

motion (ECF No. 28), and the Court has considered and relied upon such evidence

to make its recommendation as to at least some of Plaintiff's claims here, it is most

appropriate to apply the Rule 56 standard.  As Fed. R. Civ. P. 12(d) specifies: "If,

on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are

presented to and not excluded by the court, the motion must be treated as one for

summary judgment under Rule 56.  All parties must be given a reasonable

opportunity to present all the material that is pertinent to the motion."  Plaintiff

responded to Defendant's first dispositive motion and was given a reasonable

opportunity to respond to the second, including the extension he requested.  (*See*

ECF No. 29; 01/13/22 Text-Only Order.)

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is

material if it might affect the outcome of the case under governing law.  *Anderson*

9

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts[.] . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation

marks and citations omitted).  In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.] . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus., & Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### C.    Discussion

#### 1.    The second of Defendant's dispositive motions (ECF No. 28) is unopposed

Defendant filed his second motion for summary judgment on December 8, 2021.  (ECF No. 28.)  "A respondent opposing a motion must file a response, including a brief and supporting documents then available."  E.D. Mich. Local Rule 7.1(c)(1).  A response to a dispositive motion must be filed within 21 days after service of the motion.  E.D. Mich. LR 7.1(e)(2)(A).  Therefore, Plaintiff's response would ordinarily have been due on or about Friday, January 7, 2022.  Fed. R. Civ. P. 6(a) and (d).

On January 11, 2020, Plaintiff filed an emergency motion for a 72-hour extension to file his response.  (ECF No. 29.)  I granted the motion by text-only order, giving Plaintiff until January 14, 2022, to respond, as he requested.  The text-only order was mailed to Plaintiff, and has not been returned as undeliverable, so it is presumed that Plaintiff received it.  To date, no response has been filed.

Nonetheless, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded."  *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).  "The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden."  *Id*.

12

> **2.      The Court should grant summary judgment on all of Plaintiff's claims and dismiss the case in its entirety**

I have combined the arguments made in both of Defendant's instant motions to make the following recommendations.

> **a.      Counts I and VII (42 U.S.C. § 1983, 1988)**

In Count I of his amended complaint, Plaintiff claims damages for his alleged injuries under 42 U.S.C. § 1983 for violations of his constitutional rights. (ECF No. 10, PageID.96-97, ¶¶ 44-45.)  In Count VII, Plaintiff asserts a violation of 42 U.S.C. § 1988, and states, in part:

> The Defendant in conjunction with the efforts of other individuals, such as the divorce attorney, attempted to hide his misconduct in so much as he did not comply with the Michigan Open Records, fraud prevention and Police Ethics Act.  Such actions are systematic and conducted in the normal course of business.
>
> The above described policies and customs demonstrated a deliberate indifference on the part of the Defendant to the State and Federal Constitutional rights of persons within the City of Detroit, and where the cause of the violations of Plaintiff's rights alleged herein.

(ECF No. 10, PageID.104, ¶¶ 69-70.)

As Defendant asserts (ECF No. 22, PageID.198-199, 208; ECF No. 28, PageID.296), the Court should dismiss Counts I and VII for failure to state a claim upon which relief can be granted.  "'Section 1983 provides a cause of action against any person who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Constitution and federal law.'"  *Regets*

*v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014) (quoting *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996)).  But "§ 1983 contains no substantive rights.  It merely provides a vehicle for vindicating rights found in the Constitution or another federal law."  *Dibrell v. City of Knoxville, Tenn.*, 984 F.3d 1156, 1160 (6th Cir. 2021).  To the extent Plaintiff claims a violation of § 1983 itself, as opposed to using it as a vehicle for his other constitutional claims then, the Court should dismiss Count I of the amended complaint.  *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617-18 (1979) ("[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything.").

The same is true for Count VII, Plaintiff's claim for a violation of 42 U.S.C. § 1988.  (ECF No. 10, PageID.103-104, ¶¶ 66-70.)  Section 1988 grants federal courts the discretion to award reasonable attorney fees and costs to prevailing parties in civil rights actions, including those brought pursuant to 42 U.S.C. § 1983.  42 U.S.C. § 1988(b).  "It does not [,however,] create a separate federal cause of action for a civil rights violation."  *Thomas-El v. Smith*, No. 20-CV-10128, 2020 WL 1888829, at *5 (E.D. Mich. Apr. 16, 2020) ("Nor can Plaintiff proceed under 42 U.S.C. § 1988.  Section 1988 allows a federal Court to award the prevailing party in a civil rights action reasonable attorney fees as part of costs.  It does not create a separate federal cause of action for a civil rights violation.  *See*

14

*Henderson v. Reyda*, 192 F. App'x 392, 397 (6th Cir. 2006).  Plaintiff therefore fails to state a claim upon which relief may be granted under § 1988.").  Although Plaintiff appears to request damages and costs under 42 U.S.C. § 1988 in his amended complaint (ECF No. 10, PageID.104-105), under Count VII specifically, he seems to assert that Defendant's alleged improper investigations somehow violated 42 U.S.C. § 1988 itself.  (ECF No. 10, PageID.103-104, ¶¶ 66-70.) Accordingly, the Court should find that Plaintiff has failed to state a claim upon which relief can be granted and dismiss Count VII of Plaintiff's amended complaint.

> **b.    Counts II and III (False Arrest/Imprisonment under the Fourth and Fifth Amendments and M.C.L. § 750.349b**

Under Count II, Plaintiff claims false arrest and alleges that:

> Defendant Johnson acted maliciously in claiming to have fully investigated each police report knowing that his actions would lead to or that he would be solely responsible for the physical arrest of Plaintiff.

> Defendant Johnson, under color-of-law, provided [the] lower court with his false testimony and false investigation to secure a warrant for criminal arrest against this Plaintiff without probable cause *violating Michigan Code 750.349b and the Fourth Amendment to the United States Constitution*.

(ECF No. 10, PageID.97, ¶¶ 47-48 (emphasis added).)

Under Count III, Plaintiff claims false imprisonment and alleges that:

15

> Plaintiff claims damages for the injuries set forth above *under [the] Fifth Amendment to the United States Constitution*.
>
> Defendant Johnson committed an invalid use of his legal authority and has made every effort to ensure that this Plaintiff remains in confinement.
>
> Plaintiff's arrest caused him to be unlawfully detained, deprived of his personal liberty and continues to deprive Plaintiff of his freedom *violating his Fourth Amendment rights under the United States Constitution and Michigan State Code 750.349b*.

(ECF No. 10, PageID.98-99, ¶¶ 50-52 (emphases added).)

### i.  State criminal statute

First, although Defendant entirely fails to address Plaintiff's citations to M.C.L. § 750.349b under Counts II and III in either of his dispositive motions, to the extent Plaintiff brings his false arrest/imprisonment claims pursuant to that statute, the claims should be dismissed. M.C.L. § 750.349b is Michigan's criminal statute for unlawful imprisonment, and "the general rule is that a private right of action is not maintainable under a criminal statute," *Am. Postal Workers Union v. Indep. Postal Sys., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) (*cert. gtd. and then dismissed*). *See also Bass Angler Sportsman Society v. U.S. Steel Corp.*, 324 F.Supp. 412, 415 (S.D. Ala. 1971), *aff'd*, 447 F.2d 1304 (5th Cir. 1971) ("Equally important is the firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions.").

16

### ii.   Probable cause

### • Aggravated stalking

Defendant also incorrectly and seemingly carelessly asserts that he is entitled to *governmental immunity* from Plaintiff's false and arrest and false imprisonment claims because they are intentional torts under State law.  (ECF No. 10, PageID.199-200; ECF No. 28, PageID.302-303.)  But Plaintiff very obviously claims false arrest and imprisonment under the Fourth and Fifth Amendments. (ECF No. 10, PageID.97-99, ¶¶ 46-52.)  However, as Defendant proceeds to apply Sixth Circuit case law to argue that probable cause existed for both of Plaintiff's arrests, the Court may do the same, and in doing so, analyze it in the context of the pleaded defense of *qualified immunity*.[4]

---

[4] Defendant does not specifically raise the defense of qualified immunity with respect to Counts II and III in either of his dispositive motions, but does so in relation to other claims.  (*See* ECF No. 22, PageID.204-205.)  He also raised the defense in his answer to Plaintiff's amended complaint.  (ECF No. 17, PageID.167.)  *See Dehar v. Boulton*, No. 07-11584, 2008 WL 1766675, at *3 n.1 (E.D. Mich. Apr. 15, 2008), adopting report and recommendation ("Although Defendants' motions argue that Plaintiff cannot come forward with sufficient evidence to avoid summary judgment on the underlying claims apart from the qualified immunity context, since the defense was raised, the court may address the underlying issues as part of the qualified immunity analysis."); 28 U.S.C. § 1915(e)(2)(B)(iii) (court shall dismiss a case if at any time it determines that the action seeks monetary relief against a defendant who is immune from such relief).  Further, in the cases cited by Defendant, the Sixth Circuit analyzed probable cause in the qualified immunity context.  *See Criss v. City of Kent*, 867 F.2d 259 (6th Cir. 1988); *Harris, infra*; *Klein, infra*.

17

Plaintiff fails to clearly differentiate between his two separate arrests and trials in the amended complaint, but the Court must do so to properly analyze his false arrest and imprisonment claims.  As provided above, in April 2018, Plaintiff's wife reported to Defendant that she had been assaulted by Plaintiff, and that report ultimately resulted in a bench trial for a charge of misdemeanor domestic violence, and a not guilty verdict in October 2018.  (Exh. A., 04/04/18 Incident Report, ECF No. 22-2; Exh. B, Interview Statement Form, ECF No. 22-3; Exh. C, DV Misdemeanor Warrant Request, ECF No. 22-4; Exh. D., DV Case Register of Actions, ECF No. 22-5.)  Additionally, in August and September 2018, after the domestic violence incident but before the bench trial, Plaintiff's wife reported multiple violations of her PPO against Plaintiff.  (Exh. E, Feb. 2018 Petition for PPO, ECF No. 22-6; Exh. F, 08/29/18 Incident Report, ECF No. 22-7; Exh. G, 09/17/18 Incident Report, ECF No. 22-8; Exh. H, 09/18/18 Incident Report, ECF No. 22-9; Exh. I, 09/18/18 Incident Report, ECF No. 22-10; Exh. J, Sept. 2018 Incident Statement Form, ECF No. 22-11; Exh. K, Text Messages, ECF No. 22-12.)  On the basis of these allegations, Defendant submitted a report to the Wayne County Prosecutor, who recommended the issuance of a warrant for Plaintiff's arrest for aggravated stalking and malicious use of telecommunication services. (Exh. L, Investigator's Report and Prosecutor Recommendation, ECF No. 22-13.)

A jury ultimately found Plaintiff guilty of these charges on May 1, 2019.  (Exh. M,

Aggravated Stalking Register of Actions, ECF No. 22-14.)

As part of his argument for dismissal of these claims, Defendant asserts that

to the extent Plaintiff claims false arrest and imprisonment with regard to his

investigation of the aggravated stalking case, those claims are barred under *Heck v.*

*Humphrey*, 512 U.S. 477 (1994).  (ECF No. 22, PageID.202-204.)  For the reasons

that follow, I agree.

In *Heck*, 512 U.S. at 486-87, the Supreme Court held that a state prisoner

fails to state a cognizable civil rights action under 42 U.S.C. § 1983 if a ruling on

the claim(s) asserted would necessarily render his conviction or sentence invalid,

unless he proves "that the conviction or sentence has been reversed on direct

appeal, expunged by executive order, declared invalid by a state tribunal

authorized to make such determination, or called into question by a federal court's

issuance of a writ of habeas corpus, 28 U.S.C. § 2254."  And this holding applies

no matter the relief sought.  *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005)

("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter

the relief sought (damages or equitable relief), no matter the target of the prisoner's

suit (state conduct leading to conviction or internal prison proceedings)—*if* success

in that action would necessarily demonstrate the invalidity of confinement or its

duration.").

19

Again, Plaintiff bases his false arrest and imprisonment claims on allegations that Defendant arrested him without a proper investigation, fabricated police reports and warrant requests, and gave false testimony at trial.  But these subjects were issues to be addressed through suppression motions and cross-examination in his aggravated stalking case, not in a post-conviction civil rights suit.  And if Plaintiff were to prevail on these claims, his continued confinement (at this point parole/supervision) would be called into question, as it is clear that to the extent Plaintiff raises these claims with regard to the aggravated stalking case, he wishes to challenge his conviction, as opposed to any compensable injury beyond the conviction.  *See McDonough v. Smith*, 139 S.Ct. 2149, 2159 (2019) ("[A] claim like McDonough's centers on evidence used to secure an indictment and at a criminal trial . . . .  It directly challenges—and thus necessarily threatens to impugn—the prosecution itself.")  (citing *Heck*, 512 U.S. at 486-87).

Moreover, Plaintiff has offered no proof that his conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]"  *Heck*, 512 U.S. at 486-87.  In fact, Plaintiff's amended complaint does not acknowledge his conviction, his response to Defendant's first dispositive motion is only two pages long (ECF No. 24), and to date, he has filed no response to Defendant's second dispositive

motion, despite being granted an extension.  Accordingly, to the extent, if at all,

Plaintiff claims false arrest and imprisonment for Defendant's actions leading to

his conviction for aggravated stalking, the Court should dismiss those claims.

• **Domestic violence**

The Court should also dismiss Counts II and III to the extent Plaintiff claims

false arrest and imprisonment with regard to Defendant's actions leading to his

misdemeanor domestic violence charges and trial, but for different reasons.  After

incorrectly asserting entitlement to dismissal of these claims on the basis that each

is a state law tort claim from which he is entitled to governmental immunity,

Defendant argues[5] that these claims must fail because probable cause existed for

Plaintiff's arrest and detention, citing federal case law.  (ECF No. 22, PageID.200-

201; ECF No. 28, PageID.286-287, 302-303.)  Although Defendant's arguments

regarding probable cause are underdeveloped, for the reasons that follow, the Court

should grant summary judgment on these claims, finding that Defendant met his

initial burden of proving that no genuine issue of material fact exists with regard to

_____

[5] In his second dispositive motion, Defendant adds that: "[T]here is no[t] even
evidence Plaintiff was arrested or imprisoned for any time for his domestic
violence charge.  Plaintiff voluntarily appeared in court, was arraigned, and then
was released on bond.  (Ex N, pp. 42-43).  Therefore, there was no underlying
arrest or imprisonment on which to base his claims."  (ECF No. 28, PageID.303.)
As will be described in much greater detail below, because there is no genuine
material dispute that probable cause existed for the misdemeanor domestic
violence charge, the Court need not address this argument.

probable cause, *Stansberry*, 651 F.3d at 486, and Plaintiff failed to "make an affirmative showing with proper evidence in order to defeat the motion," *Alexander*, 576 F.3d at 558.

Section 1983 claims are subject to the affirmative defense of qualified immunity. *Regets*, 568 F. App'x at 386. "Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "After a defending officer initially raises qualified immunity, the plaintiff bears the burden of showing that the officer is not entitled to qualified immunity." *Id*. "In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate." *Id*.

Qualified immunity involves two steps. "First, viewing the facts in the light most favorable to the plaintiff, the court must determine whether the officer committed a constitutional violation. *Id*. "Second, if there is a constitutional violation, the court must determine whether that constitutional right was clearly established at the time of the incident." *Id*.

"It is well settled that the Fourth and Fourteenth Amendments require probable cause to justify arresting an individual." *Id*. at 951.[6]  Accordingly, "[t]o prevail on a false arrest or imprisonment claim under § 1983 and Michigan law, a plaintiff must prove that his arrest was not supported by probable cause." *Horacek v. Neph*, 466 F. App'x 508, 510 (6th Cir. 2012).  A court must look at state law to define the offense for which an officer may arrest a person, and federal law to determine whether probable cause existed for an arrest.  *Kennedy v. City of Villa Hills*, 635 F.3d 210, 215 (6th Cir. 2011).

"'In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.'" *Barton*, 949 F.3d at 950 (quoting *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)).  But an officer will be entitled to qualified immunity "'if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of . . . the information possessed at the time by the arresting agent.'" *Barton*, 949 F.3d at 950 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008)).  "Thus, 'even if a factual dispute exists about the objective reasonableness of the

---

[6] Plaintiff also claims false imprisonment under the Fifth Amendment (ECF No. 10, PageID.98-99, ¶¶ 50-52), but he cannot assert a Fifth Amendment claim here because Defendant is a state, not federal, official.  As the Sixth Circuit has held, "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes *only the actions of the federal government*." *Scott v. Clay Cty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (emphasis added).

officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful.'" *Barton*, 949 F.3d at 950 (quoting *Kennedy*, 635 F.3d at 214).

Here, no such factual dispute regarding probable cause exists, and Defendant is entitled to qualified immunity from Plaintiff's false arrest and imprisonment claims for his alleged actions related to Plaintiff's domestic violence arrest and charge. "An officer has probable cause 'when, at the moment the officer seeks the arrest, the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" *Barton*, 949 F.3d at 950-51 (quoting *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015)) (quotation marks omitted). To make a proper probable cause determination, a court must consider both the inculpatory and exculpatory evidence known to the arresting officer at the time of the arrest. *Barton*, 949 F.3d at 951.

Based on the Michigan domestic violence statute, M.C.L. § 750.81, the offense for which Plaintiff was arrested (Exh. C, ECF No. 22-4; Exh. D, ECF No. 22-5), the Court should find that Plaintiff has failed to meet his burden of establishing a genuine issue of material fact with regard to probable cause. M.C.L. § 750.81(2) states, in pertinent part: "[A]n individual who assaults or assaults and batters his or her spouse or former spouse, an individual with whom he or she has

24

had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household, is guilty of a misdemeanor . . . ."  Thus, the elements of domestic violence are: "(1) the commission of an assault or an assault and battery" and (2) a listed relationship between the individuals involved.  *People v. Cameron*, 291 Mich. App. 599, 614; 806 N.W.2d 371 (2011).  Further, a battery is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person," and an assault is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery."  *Id*. (quotation marks and citations omitted).

The April 4, 2018 incident report attached to Defendant's dispositive motions states that on February 14, 2018, Plaintiff's wife:

> WALKED INTO THE 6TH PRECINCT AND STATED THAT SHE WAS ASSAULTED BY HER HUSBAND (OFFENDER).  THE VICTIM STATED THAT THE OFFENDER GRABBED HER AND HELD HER DOWN ON THE FLOOR.  THE VICTIM STATED THAT THE OFFENDER THREATEN[ED] TO KILL HER.  THE VICTIM STATED THAT THE OFFENDER THREATEN[ED] TO CHOP HER HEAD OFF AND IF HE GO TO JAIL, THAT HE WOULD FIND HER AND KILL HER AND HE HAS KNOWLEDGE OF ALL THE VICTIM RELATIVES ADDRESSES.  THE VICTIM HAS PICTURES OF THE BRUISES FROM THE INCIDENT.

(Exh. A, ECF No. 22-2, PageID.214; Exh. A., ECF No. 22-8, PageID.308.)  And in her written statement, Plaintiff's wife indicated that she met with Plaintiff at his

25

gym on February 14, 2018, and that he exhibited assaultive behavior including grabbing her forcefully and throwing her around, telling her he would smash her head in, and pinning her to the ground. (Exh. B, ECF No. 22-3; Exh. B, ECF No. 28-3.) From both, a jury could conclude that Defendant had reasonably trustworthy information sufficient to warrant a belief that Plaintiff had committed domestic violence against his wife, *Barton*, 949 F.3d at 950-51. *See Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003) ("Gallagher's confession that Thacker had abused her alone is sufficient to establish probable cause.") (citing *Klein v. Long*, 275 F.3d 544, 551-52 (6th Cir. 2001)).

Plaintiff alleges in his verified (ECF No. 11, PageID.111) amended complaint that the OSF Defendant submitted in support of the charge was unsubstantiated (ECF No. 10, PageID.80, ¶ 15), that his brother provided exculpatory information to Defendant, but Defendant remained defiant (ECF No. 10, PageID.87-89, ¶¶ 29-31), that Defendant did not contact anyone to verify information during his investigation (ECF No. 10, PageID.90-91, ¶ 35), and that the judge presiding over his domestic violence bench trial questioned the integrity of Defendant's investigation, including a dispute over whether an assault took place at Plaintiff's gym or at the couple's home (ECF No. 10, PageID.91-93, ¶¶ 36-39). But he has provided the Court no evidence beyond these statements, *e.g.*, a transcript of his domestic violence bench trial, and asserts in his two-page response

to Defendant's initial dispositive motion only that he need not yet meet the

summary judgment standard, and that an older standard for qualified immunity

should be applied.  And, as Defendant asserts in his second dispositive motion

(ECF No. 28, PageID.300), although Plaintiff testified at his deposition that

exculpatory witnesses and surveillance video existed and should have been

investigated (Exh. N, Plaintiff's Dep. Trans., ECF No. 28-15, PageID.398-405), he

failed to identify the witnesses (Exh. N, ECF No. 28-15, PageID.398-405; Exh. O,

Answers to Interrogatories, ECF No. 28-16, PageID.460-461), and testified that the

surveillance video was no longer available and he had not seen it himself (ECF No.

28-15, PageID.403-405).[7]  Even viewing these assertions in the light most

favorable to Plaintiff, they amount to conclusory statements insufficient to rebut

the probable cause evidence produced by Defendant.  *Viergutz*, 375 F. App'x at

485.

    Moreover, as provided above, Plaintiff's wife gave a written statement to the

police, which may be sufficient to establish probable cause, *Klein*, 275 F.3d at 551-

52; *Thacker*, 328 F.3d at 257.  And even if other evidence was available at the time

of the investigation, the reasonably trustworthy information within Defendant's

---

[7] I have declined to review the entire deposition transcript, beyond those portions
cited by Defendant, as Plaintiff has not yet responded to Defendant's second
dispositive motion, and therefore fails to direct the Court's attention to any
particular testimony.

knowledge when he sought the warrant was "sufficient to warrant a prudent man in believing that [Plaintiff] had committed . . . an offense." *Barton*, 949 F.3d at 950-51.

Accordingly, Plaintiff has failed to meet his burden of demonstrating a genuine issue of material fact with regard to probable cause, and the Court should find that Defendant is entitled to qualified immunity from Plaintiff's false arrest and imprisonment claims as they relate to Plaintiff's domestic violence charge. In so doing, the Court should grant summary judgment on Counts II and III of Plaintiff's amended complaint.

### c.    Counts IV and V (Fifth and Fourteenth Amendments)

In Count IV of his amended complaint, Plaintiff claims a Fifth Amendment violation, stating:

> Plaintiff claims damages for the injuries set forth above under [the] Fifth Amendment to the United States Constitution wherein Defendant Johnson *did not give equal protection to Plaintiff as he did this Plaintiff's wife* and the protections he gave to the State.

> Defendant Johnson in his overzealousness to achieve conviction, denied this Plaintiff his rights to due process when he did not investigate the allegations made by Plaintiff's wife wherein he had every opportunity and support to.

> Even after having been openly reprimanded by the Court Defendant Johnson continues to stalk and harass Plaintiff with his false and fraudulent information.

> Defendant Johnson's lack of investigation of the allegations and fabricated information to cause this Plaintiff's physical arrest violated

28

> Plaintiff's rights to due process per the Fifth Amendment to the
> United States Constitution and Michigan Constitutional law Article I
> § Seventeen.

(ECF No. 10, PageID.99-100, ¶¶ 54-57 (emphasis added).)

And in Count V of his amended complaint, Plaintiff claims a Fourteenth

Amendment violating, stating:

> Plaintiff claims damages for the injuries set forth above under the
> Fourteenth Amendment to the United States Constitution.
>
> Defendant Johnson admitted that he knew this Plaintiff was the
> subject of an existing personal protection order when he fabricated the
> police information report to rise to the standard of violating the codes
> and statutes of the State of Michigan and the Wayne County
> Municipal Corporation.  Thus, his actions were intentionally carried
> out to create a nexus between this Plaintiff and a newly fabricated
> criminal case to the benefit of the State of Michigan and the Wayne
> County Municipal Corporation.
>
> Defendant Johnson's insufficient police report information and other
> baseless activity to create this criminal nexus violated Plaintiff's
> rights to due process per the Fourteenth Amendment to the United
> States Constitution.

(ECF No. 10, PageID.100-101, ¶¶ 59-61.)

First, as provided above, Defendant is a state, not federal, actor, so any due

process or equal protection claims against him should be pursued under the

Fourteenth rather than the Fifth Amendment.  *See Scott v. Clay Cty.*, 205 F.3d 867,

873 n.8 (6th Cir. 2000).  However, reading Plaintiff's amended complaint under

the liberal pleading standards afforded to *pro se* Plaintiffs, I have interpreted

Plaintiff's amended complaint to claim equal protection and due process violations

29

under the Fourteenth Amendment for Defendant's alleged fabrication of evidence, false statements, and improper investigation.

As Defendant asserts (ECF No. 22, PageID.204-206; ECF No. 28, PageID.301), to the extent Plaintiff has even stated a due process claim under Counts IV and V, he is entitled to qualified immunity because he bases the claim on his allegations of false arrest and imprisonment, which have already been addressed and disposed of above under the Fourth Amendment.  Further, the Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., Amend. XIV, § 1.  But Defendant has only cursorily stated that he was denied equal protection, with no evidence that of "intentional discrimination against him because of his membership in a particular class."  *Harris v. City of Circleville*, 583 F.3d 356, 369 (6th Cir. 2009).  And even if, *arguendo*, the Court were to construe Plaintiff's claim under a "class of one" theory, he has not demonstrated in his pleading or response that he is *similarly situated* to someone who was treated differently − i.e., to another person accused of domestic violence or aggravated stalking, as opposed to his wife, the accuser/victim (ECF No. 10, PageID.99, ¶ 54) − or that the government actor lacked a *rational basis* for his actions under the circumstances.  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (recognizing an equal protection claim brought by a "class of one" "where the

plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.")  Nor has Plaintiff negated "every conceivable basis which might support the government action" or "demonstrate[d] that the challenged government action was motivated by animus or ill will."  *Warren v. City of Athens, Ohio*, 411 F.3d 697, 711 (6th Cir. 2005) (quotation marks and citation omitted).  Accordingly, the Court should dismiss and/or grant summary judgment on Counts IV and V of Plaintiff's amended complaint.

### d.   Count VI (Eighth Amendment)

In Count VI of Plaintiff's first amended complaint, he claims an Eighth Amendment violation, stating, in part:

> Defendant Johnson deliberately and maliciously delivered his police report information with his false language to show that this Plaintiff was a danger to his wife to the state and the lower court where he intended and knowingly did cause the court to burden this Plaintiff with an exuberant bond condition or otherwise block Plaintiff's release from imprisonment after having tendered bond and in what should have been an otherwise simple divorce case.

> Defendant Johnson's colorable submission and false representation of the facts to block or hinder release was in violation of Plaintiff's Eighth Amendment rights under the United States Constitution.

(ECF No. 10, PageID.102, ¶¶ 64-65.)

In so doing, Plaintiff alleges:

The Plaintiff was eventually released under GPS tether supervision on October 2, 2018 from Wayne County Jail Division III, William

Dickerson Detention Facility, and ordered to appear at a bond revocation hearing less than twelve hours later to allow the state an opportunity to show cause as to why the Plaintiff's PRB should be revoked based on the new charges he was just arraigned on. Defendant Johnson appeared with malicious intent to show cause as to why the Plaintiff should be remanded to the Wayne County Jail.

\* \* \*

Defendant's efforts were successful and Plaintiff was remanded to Wayne County Jail on October 3, 2018 on a $50,000 cash bond, in violation of his Eighth Amendment right, where he remained imprisoned until 4 days after his acquittal in the subsequent bench trial that concluded on October 19, 2018.

(ECF No. 10, PageID.87-89, ¶¶ 28, 31.)[8]

Defendant fails to address bond specifically, and instead asserts entitlement to dismissal of Plaintiff's Eighth Amendment claim because the rights only attach after conviction and sentencing, and Plaintiff did not articulate anything cruel or unusual about his confinement related to the domestic violence charge.  (ECF No. 22, PageID.206-207; ECF No. 28, PageID.301.)  Further, he argues that Plaintiff is barred from making an Eighth Amendment claim with regard to his aggravated stalking conviction because there was probable cause for that arrest, and he was found guilty of the crimes.  (ECF No. 28, PageID.301-302.)

---

[8] The undersigned assumes that Plaintiff is referencing revocation of his bond as a result of the aggravated stalking charges which followed his separate domestic violence charge.

Defendant's undeveloped argument aside, it is clear that Plaintiff bases his Eighth Amendment claim on Defendant's alleged false statements, which have been addressed at length above.  To the extent Plaintiff brings these allegations with regard to his aggravated stalking conviction, they are *Heck*-barred, and to the extent made with regard to his domestic violence charge, he has failed to meet his burden of establishing a genuine issue of material fact with regard to probable cause.  Finally, if Plaintiff actually intended to pursue a more applicable claim under the Eight Amendment, like questioning the conditions of his incarceration or the administration of cruel and unusual punishment, he has unquestionably sued the wrong individual.  The arresting officer can hardly be responsible for the conditions of Plaintiff's post-conviction imprisonment.  Accordingly, the Court should grant summary judgment on Plaintiff's Eighth Amendment claim and dismiss Count VI.

### D.    Conclusion

The Court should **GRANT** Defendant's motions to dismiss and/or for summary judgment (ECF Nos. 22, 28), and with no remaining claims against the sole Defendant, dismiss the case with prejudice.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc*.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc*.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated: February 11, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE